1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                  FOR THE EASTERN DISTRICT OF CALIFORNIA

8    MELVIN RAY BRUMMETT JR.,

9            Plaintiff,                    No. CIV S-04-1797 GEB JFM P

10       vs.

11   CLAIR TESKE, et al.,

12          Defendants.                    ORDER AND

13   _____/     FINDINGS AND RECOMMENDATIONS

14          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

15   42 U.S.C. § 1983.  In his unverified first amended complaint, plaintiff claims that defendants

16   violated his rights under the Eighth Amendment by failing to protect plaintiff from a known risk

17   of serious injury and acting with deliberate indifference to plaintiff's serious medical needs

18   during a period when he was incarcerated at the Shasta County Jail.  Plaintiff also raises a

19   pendent state law negligence claim.

20                    ALLEGATIONS OF THE AMENDED COMPLAINT

21          On June 9, 2005, plaintiff filed an unverified amended complaint containing the

22   following allegations.  On January 23, 2004, while playing basketball on the recreation yard at

23   the Shasta County Jail, plaintiff broke his tibula and "severely tore" tendons and ligaments in his

24   right ankle.  (Amended Complaint, filed June 9, 2005, at 5.)  On the same day, plaintiff's ankle

25   was x-rayed and defendant Miller ordered plaintiff's ankle placed in a plaster splint until the

26   swelling went down and the ankle could be put in a cast.  (Id.)  On January 30, 2004, defendants

1

Blankenship and Miller told plaintiff that he would have to move to another cell.  (Id.)
Defendant Miller took plaintiff's splint and told him it would be replaced later with a cast.  (Id.)
Plaintiff, who was walking on crutches, was forced to move to an upper bunk, and defendants
Blankenship, Miller, and Teske all watched him struggle to get up first onto a cement deck and
then into the bunk.  (Id. at 6.)  On February 18, 2004, plaintiff's ankle gave out, causing him to
fall into the steel bunk and then, head first, onto the cement floor, causing him serious injuries.
(Id.)  Plaintiff did not receive immediate medical attention because defendant Johnson was not at
her duty station.  (Id.)

On February 19, 2004, defendant Miller was verbally abusive to plaintiff and
inflicted pain on plaintiff while examining plaintiff following the fall on February 18.  (Id. at 7.)
Plaintiff did not receive x-rays of his neck until February 20, 2004.

Defendants Miller, Blankenship and Teske all knew that plaintiff was disabled
and on psychotropic medication at the time that plaintiff was assigned to the upper bunk.  (Id. at
8-9.)  Plaintiff contends that any reasonable officer should have known that both the medication
and the ankle injury placed plaintiff at high risk of serious injury from a fall if he were placed in
an upper bunk.  (Id. at 9.)  Plaintiff also claims that he did not receive adequate medical care for
the injuries he sustained in the fall.  (Id. at 10.)

Although defendant names defendant Shasta County Jail as a defendant, the
amended complaint contains no charging allegations as to defendant Shasta County Jail.

By his amended complaint, plaintiff seeks damages as well as injunctive relief in
the form of an order requiring Shasta County to provide necessary medical testing.  When an
inmate seeks injunctive relief concerning the jail or prison where he is incarcerated, his claims
for such relief become moot when he is no longer subjected to those conditions.  See Weinstein
v. Bradford, 423 U.S. 147, 149 (1975); Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995).
Plaintiff's prayer for injunctive relief was moot when he filed this action as he was housed at
Corcoran, California.  Plaintiff's claims for damages against defendants remain for adjudication.

PROCEDURAL BACKGROUND

On August 14, 2007, defendants Teske and Miller filed a motion for summary judgment.  On August 15, 2007, defendants Loraine Blankenship, Amber Johnson and Shasta County Jail filed a motion for summary judgment.[1]  On October 24, 2007, plaintiff filed an opposition.  On October 31, 2007, defendants Teske and Miller filed a reply.  On November 2, 2007, defendants Blankenship, Johnson and Shasta County Jail filed their reply.

DEFENDANT SHASTA COUNTY

Although plaintiff named the Shasta County Jail as a defendant, the second amended complaint contains no charging allegations as to this defendant.

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution . . . shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

---

[1] On March 6, 2006, defendant Shasta County filed an answer to plaintiff's first amended complaint.

(9th Cir. 1979); <u>Mosher v. Saalfeld</u>, 589 F.2d 438, 441 (9th Cir. 1978), <u>cert.</u> <u>denied</u>, 442 U.S. 941 (1979).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  <u>See</u> <u>Ivey v. Board of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982).

Because plaintiff failed to include any charging allegations as to the Shasta County Jail, operated by defendant Shasta County, this defendant is entitled to be dismissed from this action.  In addition, plaintiff has failed to adduce facts that establish that any policy or custom of Shasta County resulted in a deprivation of plaintiff's rights, and has thus failed to demonstrate liability under a theory of respondeat superior.  Defendant Shasta County should be dismissed.

PRETRIAL DETAINEE

Plaintiff contends that he was a pretrial detainee rather than a prisoner, based on the fact that he was not sentenced until March 12, 2004.  (Opp'n. at 2.)  Plaintiff argues his case should be analyzed under the Fourteenth Amendment "objectively reasonable" standard rather than the Eighth Amendment "deliberate indifference" standard.  (<u>Id.</u>)

Defendants Shasta County, Lorayne Blankenship and Amber Johnson contend that plaintiff was tried by a jury and convicted on November 26, 2003, months before the allegations herein took place.  (November 2, 2007 Reply at 1.)  Defendants argue that plaintiff misread the cases cited, and that the Eighth Amendment applies after a conviction.  <u>Revere v. Massachusetts Gen. Hosp.</u>, 463 U.S. 239 (1983) ("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . .  [T]he State does not acquire the power to punish . . . until after it has secured a formal adjudication of guilt in accordance with due process of law."); <u>Bell v. Wolfish</u>, 441 U.S. 520, 523; 536 (1979)(pretrial detainees are defined as "those persons who have been charged with a crime but who have not yet been tried on the charge."  "A person lawfully committed to pretrial detention has not been adjudged guilty of any crime.")

4

1    Defendants ask the court to take judicial notice of the November 26, 2003 minutes

2  from the Shasta County Superior Court confirming entry of guilty verdicts against plaintiff.

3  Good cause appearing, defendants' request for judicial notice will be granted.  The minutes

4  confirm that plaintiff was tried on the charges against him, the jury found him guilty, and the

5  jury's verdict was entered against him on November 26, 2003.  Defendants' arguments are well

6  taken.  Because plaintiff was tried and convicted prior to the February 18, 2004 allegations

7  contained herein, he was not a pretrial detainee at the time of the incidents at issue here, and the

8  court will apply Eighth Amendment standards.[2]

UNDISPUTED FACTS

10    1.  Plaintiff was incarcerated in the Shasta County Jail from September, 2003,

11  until March 30, 2004.  (Pl.'s Depo. at 10.)

12    2.  Defendant Claire Teske, R.N., is a licensed registered nurse and was the

13  Program Manager for the California Forensic Medical Group, Inc. at the Shasta County Jail

14  during the time plaintiff was injured  Teske was also the custodian of medical records until July

15  1, 2005.

16    3.  Defendant Robert Miller, is a licensed Family Nurse Practitioner employed by

17  the California Forensic Medical Group, Inc. at the Shasta County Jail in 2004.

18    4.  Defendant Lorayne Blankenship was employed as a deputy with the Shasta

19  County Sheriff's Department assigned to the Shasta County Jail in 2004.

20    5.  Defendant Amber Johnson was employed as a correctional officer by the

21  County of Shasta, assigned to the Shasta County Jail in 2004.

22  /////

23  /////

24  ───────────────

25    [2]  In any event, as defendants Teske and Miller point out, pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, and this court would apply the same standards.  Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir.1998);

26  see also Redman v. County of San Diego, 942 F.2d 1435, 1441 (9th Cir.1991).

1       6.  On January 23, 2004, while playing basketball, plaintiff sustained an ankle

2 injury and was placed in a medical cell.  When confined in a medical cell, there was shower and

3 phone access, but no access to television or ability to socialize with other inmates.

4       7.  On January 30, 2004, custody determined that one of the inmates in the

5 medical unit needed to be moved in order to make room for a female inmate.

6       8.  Plaintiff was to be moved into an administrative segregation (ad-seg) pod.

7       9.  Inmates housed in the Ad-Seg pod have access to television and are permitted

8 to socialize with each other if they choose to do so.

9       10.  On January 30, 2004, when plaintiff was moved to the ad-seg pod, he was on

10 crutches.  Defendant Blankenship moved plaintiff's bedding and personal property into the new

11 cell for plaintiff.  (Blankenship's Admission No. 3.)

12       11.  Plaintiff remained in the new cell and used the upper bunk from January 30,

13 2004 until February 18, 2004, without incident.[3]

14       12.  Prior to his fall from the top bunk, plaintiff felt his ankle was feeling better.

15       13.  On February 18, 2004, plaintiff fell head first into the cement floor while

16 getting down from the upper bunk, and was found face down on the floor.

17       14.  Plaintiff was unconscious when he fell to the floor and did not remember

18 anything until he was shaken awake by Officer Scarry.

19       15.  Defendant Johnson was not at the medical station when plaintiff fell.

20       16.  Plaintiff does not know where defendant Johnson was or what she was doing

21 when he fell.

22 /////

23

24     [3]  The parties agree that plaintiff demonstrated getting into the upper bunk prior to his reassignment at least twice.  (Pl.'s Depo. at 40-41.)(Blankenship witnessed the first attempt and

25 Miller and Teske joined to witness the second attempt.)  Plaintiff, however, contends the demonstration was to show defendants how unsafe and dangerous it was.  (Opp'n at 7.)

26 Defendants contend it was to assure them plaintiff could safely access the upper bunk.

1    17.  Jail records reflect the incident was reported at approximately 9:29 p.m.

2  (Pl.'s Ex. Q.)

3    18.  Defendant Johnson conducted a security cell check at 9:30 p.m.

4    19.  Defendant Johnson could not recall her precise location within the jail at the

5  time plaintiff fell from the upper bunk.

6    20.  Plaintiff was not taken to a hospital or examined by a doctor on February 18,

7  2004.

8                    SUMMARY JUDGMENT STANDARDS UNDER RULE 56

9           Summary judgment is appropriate when it is demonstrated that there exists "no

10  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

11  matter of law." Fed. R. Civ. P. 56(c).

12           Under summary judgment practice, the moving party

13           always bears the initial responsibility of informing the district court
             of the basis for its motion, and identifying those portions of "the
14           pleadings, depositions, answers to interrogatories, and admissions
             on file, together with the affidavits, if any," which it believes
15           demonstrate the absence of a genuine issue of material fact.

16  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the

17  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

18  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

19  to interrogatories, and admissions on file.'" Id.  Indeed, summary judgment should be entered,

20  after adequate time for discovery and upon motion, against a party who fails to make a showing

21  sufficient to establish the existence of an element essential to that party's case, and on which that

22  party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

23  concerning an essential element of the nonmoving party's case necessarily renders all other facts

24  immaterial." Id.  In such a circumstance, summary judgment should be granted, "so long as

25  whatever is before the district court demonstrates that the standard for entry of summary

26  judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

                                             7

1    If the moving party meets its initial responsibility, the burden then shifts to the

2    opposing party to establish that a genuine issue as to any material fact actually does exist.  See

3    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

4    establish the existence of this factual dispute, the opposing party may not rely upon the

5    allegations or denials of its pleadings but is required to tender evidence of specific facts in the

6    form of affidavits, and/or admissible discovery material, in support of its contention that the

7    dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

8    must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

9    of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

10   (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

11   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

12   return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

13   1436 (9th Cir. 1987).

14       In the endeavor to establish the existence of a factual dispute, the opposing party

15   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

16   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

17   versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

18   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

19   genuine need for trial.'"  Matsushita, 475 US. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

20   committee's note on 1963 amendments).

21       In resolving the summary judgment motion, the court examines the pleadings,

22   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

23   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

24   477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

25   court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

26   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

1   produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

2   Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

3   1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

4   show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

5   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

6   'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

7           On January 20, 2005, the court advised plaintiff of the requirements for opposing

8   a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

9   F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); Klingele v.

10  Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

11                                      ANALYSIS

12          a.  Medical Care

13          In Estelle v. Gamble, 429 U.S. 97, 106 (1976), the Supreme Court held that

14  inadequate medical care did not constitute cruel and unusual punishment cognizable under

15  section 1983 unless the mistreatment rose to the level of "deliberate indifference to serious

16  medical needs."  Id.  To establish deliberate indifference, plaintiff must show that defendants

17  knew of and disregarded an excessive risk to his health or safety.  Farmer v. Brennan, 511 U.S.

18  825, 837 (1994).  A prison official must "both be aware of facts from which the inference could

19  be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.

20  The nature of a defendant's responses must be such that the defendant purposefully ignores or

21  fails to respond to a prisoner's pain or possible medical need in order for "deliberate indifference"

22  to be established.  McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir.1992), overruled in part on

23  other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir.1997).

24  Deliberate indifference may occur when prison officials deny, delay, or intentionally interfere

25  with medical treatment, or may be demonstrated by the way in which prison officials provide

26  medical care.  Id. at 1059-60.  However, a showing of merely inadvertent or even negligent

medical care is not enough to establish a constitutional violation.  Estelle, 429 U.S. at 105-06; Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir.1998).  Instead, an inmate must allege facts sufficient to indicate a culpable state of mind on the part of prison officials.  Wilson v. Seiter, 501 U.S. 294, 297-99 (1991).  Accordingly, a difference of opinion about the proper course of treatment is not deliberate indifference nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation.  See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir.  2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989).

Here, plaintiff has failed to present any evidence showing that defendant Johnson had a culpable state of mind when she was not at her medical station at the time plaintiff fell.  The evidence does not demonstrate or give rise to an inference that defendant Johnson was deliberately indifferent to plaintiff's medical condition once she became aware plaintiff had fallen.  Defendant Johnson noted that plaintiff's injury was reported at 9:29 p.m.  Plaintiff has provided the declaration of Phil Scoma who calculated it took about eight minutes for help to reach plaintiff after he fell.  (Pl.'s Ex. F at 3.)  Plaintiff has not demonstrated how the eight minute delay was harmful.  McGuckin at 1060 (quoting Shapley v. Nevada Board of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)(per curiam)).  Scoma also stated that plaintiff was "rolled out in the wheelchair and moved out of his cell [and] immediately moved to the medical area cells." (Pl.'s Ex. F at 4.)  Plaintiff has provided medical records demonstrating that plaintiff was provided medical care following his fall on February 18, 2004 (pl.'s Ex. I at 3-5) and again on February 19, 2004 (id. at 5-6).  Plaintiff has therefore failed to demonstrate a triable issue of fact that defendant Johnson was deliberately indifferent to plaintiff's serious medical needs based on an alleged delay in receiving medical treatment or failure to obtain medical treatment for plaintiff after his fall on February 18, 2004.[4]

[4]  It does not appear plaintiff's claims against defendant Blankenship included claims concerning medical treatment.  To the extent that he did, however, such claims fail as a matter of

Plaintiff's claims against defendants Teske and Miller are also unavailing.

Plaintiff contends defendants Teske and Miller were deliberately indifferent because plaintiff was

not taken to a hospital or personally examined by a doctor on February 18, 2004.  However,

inmate Scoma has declared that plaintiff was transferred to the medical unit shortly after he fell.

This testimony coincides with the notes entered on the "Doctor's Orders" form in plaintiff's

medical records:

> 2/18/04       Lac to face
> 2100          Move to medical for observation.
>               V/signs with Neuros Q 4°
>               Notify provider if condition worsens
>               P.O. Dr. Eithiduee [sic]/C Teske, R.N./ [signature illegible]

(Pl.'s Ex. at 3.)  Progress notes further confirm plaintiff was seen by a medical professional on

February 18, 2004, 2100:

> (S)  Called to Ad Seg cell where IM was found face down on floor after
> apparent fall.
>
> (O)  On floor with head turned left.  Awake & verbal.  Bleeding
> from lip and gum areas.  States that he hit his teeth on upper bed
> framework.  Teeth appear intact.  States that 2 teeth feel loose on
> bottom.
>
> Lower lip displays puncture inside from upper teeth – cleansed
> with water.  Grape-size swelling over left eye – tender.  Ice to face
> and lip.  Signs to extremities intact.  Oriented to time, place & day
> of the week.  Does not remember last meal.  Posterior neck tender.
> No [corepitue] [sic] felt.  Range of motion of neck guarded.  Neck
> collar applied.  B/P 138/88  P. 90  R 22.  Moved to medical per on
> call provider's orders.  Observation, V/signs with neuros
> scheduled.

(Pl.'s Ex. I, at 4-5.)  These records confirm that plaintiff was seen by a registered nurse who

contacted the on-call provider.[5]

---

law.  As a Sheriff's deputy, defendant Blankenship was not responsible for plaintiff's medical
care.  (Blankenship Decl. at 2.)

[5] Plaintiff makes much of the variations of time reported by defendants in this action.
However, witness Scoma estimated it took about eight minutes for help to reach plaintiff.  (Pl.'s
Ex. F at 3 – 4 to 6 minutes before the nurse arrived (who had no key to the pod), then an

1    In his amended complaint, plaintiff concedes he received a "full diagnostic

2  evaluation of his injuries and medical condition" at 1000 hours on February 19, 2004.  (First

3  Amended Complaint "FAC" at 7.)  Defendant Nurse Practitioner Robert Miller performed this

4  evaluation.  (Pl.'s Ex. I at 5.)  Miller ordered x-rays of plaintiff's ankle and c-spine.  (Id.)  The

5  medical record for February 19, 2004 at 2200 reflects plaintiff's "oral wounds healing," "neck

6  collar in place" and "continuous posterior neck discomfort."  (Id.)  Plaintiff received the x-rays

7  on February 20, 2004; the subsequent report of the three views of plaintiff's cervical spine

8  reflected no fractures or acute bony abnormalities noted in the cervical spine x-ray.  (Defts.'

9  Reply, Ex. C.)  "There is no evidence of prevertebral soft tissue swelling."  (Id.)

10    This evidence does not support plaintiff's view that defendants were deliberately

11  indifferent to plaintiff's serious medical needs because they failed to transport him to the hospital

12  or failed to have him examined by a doctor on the day of the fall or shortly thereafter.  The

13  records reflect that after the fall plaintiff was seen by a registered nurse, who contacted the on

14  call provider for instructions.  The next day, plaintiff was provided a complete evaluation by a

15  nurse practitioner who ordered x-rays of his ankle and c-spine; those x-rays were taken around

16  3:00 p.m. the next day and reflected no fracture or soft tissue injury to his neck.  Plaintiff was

17  retained in the medical unit until February 24, 2004 for observation.  (Teske Am. Decl. at 3.)

18    A difference of medical opinion is insufficient to establish deliberate indifference.

19  Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir.2004).  To prevail on a claim involving choices

20  between alternative courses of treatment, a prisoner must show that the course of treatment the

21  doctors chose was medically unacceptable in light of the circumstances and that it was chosen in

22  conscious disregard of an excessive risk to plaintiff's health.  Jackson v. McIntosh, 90 F .3d 330,

23  332 (9th Cir.1996).

24  /////

25  

26  additional 2 minutes for many officers to arrive.)  Plaintiff has not demonstrated how an 8 minute
delay constitutes deliberate indifference.

Plaintiff has failed to produce evidence that he had untreated or undiscovered injuries that required the attention of a physician.  While plaintiff claims he should have received a cat-scan, M.R.I. or head scan, he presents no evidence to support his theory that his injuries warranted these tests.  The medical records provided by plaintiff do not suggest such tests were appropriate.

Plaintiff has also provided the transcript from the hearing in his underlying criminal case held on February 19, 2004.  Plaintiff's counsel recounted for the court that he had been unable to meet with plaintiff at the jail the previous evening because plaintiff had a "serious medical emergency," had fallen off his bunk, "thought he was going to lose his teeth," and they weren't sure if plaintiff was going to end up in the emergency room.  (Pl.'s Ex. P, Reporter's Transcript, at 714.)

> He advises me that his vision is still blurred, he's in great pain,
> he's taking eight hundred milligrams of Ibuprophen and another
> drug called Aclifen and I think one other.  Forty milligrams of
> Prozac and a hundred milligrams of Trazadone, as well as the
> Ibuprophen and expressed to me he's in a great deal of discomfort.

(Id. at 724-25.)  The judge asked plaintiff if he was in physical pain and he responded "Yes, sir, I am."  (Id. at 726.)  The hearing was continued.  (Id. at 728.)

Undoubtedly plaintiff suffered pain as a result of his fall from the upper bunk, striking his face and mouth and landing on the hard cement floor.  But the presence of pain, without more, is insufficient to demonstrate defendants Teske and Miller were deliberately indifferent to plaintiff's serious medical needs.  Plaintiff has failed to adduce evidence that he presented himself to Teske or Miller, complaining of pain, yet was refused pain medications.  Rather, the record reflects plaintiff was receiving pain medication and did receive medical treatment.  Although plaintiff believes it was not the type of medical treatment to which he was

/////

/////

/////

1  entitled or, in his opinion, should have received, plaintiff has provided no evidence that

2  defendants Teske and Miller were deliberately indifferent to his medical needs after the fall.[6]

3          Finally, plaintiff has provided evidence that he was prescribed medication for

4  headaches and neck pain on May 4, 2006.  (Pl.'s Ex. T.)  However, in plaintiff's subjective

5  history, the medical professional at the Substance Abuse Treatment Facility at Corcoran wrote:

6  "patient had history of headaches even before the accident but increased after fall 2004; since

7  then has neck pain and numbness of left upper extremity.  Headache . . . two to three times per

8  week."  (Id.)  Plaintiff was incarcerated at the Shasta County Jail until March 30, 2004, at which

9  time he was transferred to the Department of Corrections and housed at Corcoran.  Plaintiff has

10  failed to provide medical evidence that his present migraines and neck pain are the result of

11  defendant Teske and Miller's deliberate indifference to his serious medical needs while plaintiff

12  was housed at the jail, rather than as a consequence of his fall from the upper bunk and/or the

13  exacerbation of a prior medical condition.  Plaintiff has provided no medical evidence that as a

14  direct result of his fall he sustained additional injury that was undiagnosed or undetected by

15  defendants Miller or Teske.

16          In light of the above, defendants Miller and Teske are also entitled to summary

17  judgment on plaintiff's medical claims.

18          b.  Failure to Protect

19          Under the Eighth Amendment, it is the "unnecessary and wanton infliction of

20  pain," rather than accident or negligence, that violates an inmate's constitutional rights.  Whitley

21  v. Albers, 475 U.S. 312, 319 (1986).  See also Ingraham v. Wright, 430 U.S. 651, 670 (1977);

22  Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).  In order to prevail on an Eighth Amendment

23

24          [6]  Plaintiff alludes to verbal mistreatment of him by defendant Miller.  Verbal abuse,
without more, fails to state a claim of cruel and unusual punishment under the Eighth
25  Amendment.  Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987); see Oltarzewski v. Ruggiero, 830
F.2d 136, 139 (9th Cir. 1987) (neither verbal abuse nor the use of profanity violate the Eighth
26  Amendment).

1   claim, a plaintiff must prove facts that satisfy a two-part test.  First, the plaintiff must prove that

2   objectively he suffered a sufficiently serious deprivation.  Wilson v. Seiter, 501 U.S. 294, 298

3   (1991).  Second, he must prove that subjectively the defendant had a culpable state of mind in

4   allowing the deprivation to occur.  Id. at 299.  An inmate's injury "translates into constitutional

5   liability" for a jail or prison official responsible for the inmate's safety when the deprivation

6   suffered is sufficiently serious and the official had a sufficiently culpable state of mind.  Farmer

7   v. Brennan, 511 U.S. 825, 834 (1994).

8          Where an inmate's claim is based on alleged failure to prevent harm, the inmate

9   may satisfy the "sufficiently serious" requirement by showing the existence of "conditions posing

10  a substantial risk of serious harm" to him.  Id. at 834; see also Helling v. McKinney, 509 U.S. 25,

11  33-34 (1993).  A jail or prison official has a sufficiently culpable mind only where "the official

12  knows of and disregards an excessive risk to inmate health or safety."  Farmer, 511 U.S. at 837.

13  "[T]he official must both be aware of facts from which the inference could be drawn that a

14  substantial risk of serious harm exists, and he must also draw the inference."  Id.

15         Upon consideration of the parties' evidence and arguments in the present case, the

16  court finds that plaintiff has failed to present any evidence showing that defendant Johnson had a

17  culpable state of mind when she was away from the medical station at the time plaintiff fell.

18  Moreover, plaintiff has failed to offer any evidence that demonstrates the existence of a disputed

19  issue of material fact as to defendant Johnson's state of mind on this element of his claim.

20  Plaintiff has also failed to provide any evidence that defendant Johnson was responsible for

21  plaintiff's assignment to an upper bunk.  Defendant Johnson is therefore entitled to summary

22  judgment on this claim.

23         Defendants Blankenship, Miller and Teske contend that plaintiff wanted to move

24  to the ad-seg pod because he could watch television and socialize with other inmates.

25  Defendants argue that plaintiff insisted he was able to maneuver the upper bunk and it is

26  undisputed that he demonstrated accessing the upper bunk at least two times before he was

1   reassigned to the upper bunk.  Defendants contend that because plaintiff demonstrated he was

2   able to access the upper bunk and then successfully resided in the third bunk for over two weeks

3   prior to the incident herein, they were not aware of any disability or injury that created an

4   excessive risk that plaintiff might suffer serious harm.  Moreover, defendants note, plaintiff was

5   playing basketball at the time he sustained his ankle injury on January 23, 2004.

6          Plaintiff contends he told defendants Blankenship, Miller and Teske that

7   Trazadone had an extreme adverse affect on his equilibrium.  (Opp'n at 9.)  Plaintiff insists he

8   was forced to take the upper bunk and that by showing them on two separate occasions how he

9   accessed the upper bunk, he was demonstrating how unsafe it would be for him to be housed in

10  the upper bunk.  Plaintiff avers that he asked prison officials to reassign him to a lower bunk.

11  Plaintiff argues he is entitled to relief on this claim based on Frost v. Agnos, 152 F.3d 1124, 1129

12  (9th Cir.1998).  Finally, inmate Phil Scoma has provided a declaration confirming that on the

13  morning of the accident, a cell with a lower bunk became available.  (Pl.'s Ex. F at 6.)  "[W]e as

14  inmates suggested the idea of moving [plaintiff] to that lower bunk to the staff that day but for

15  whatever the reasons were, that unfortunately didn't get accomplished."  (Id.)

16         In Frost, the Ninth Circuit found that slippery floors without protective measures

17  could create a sufficient danger to warrant relief where prison guards were aware that the inmate

18  was on crutches and fell and injured himself several times.  Id., 152 F.3d at 1129.  Here,

19  defendants were aware that plaintiff was on crutches, but the court does not find that defendants

20  unreasonably ignored an excessive risk.  The facts of the instant case are not like the facts in

21  Frost, in that plaintiff does not allege that he suffered repeated injuries.

22         Here, a recently sprained ankle still in a splint and still requiring the use of

23  crutches is a serious medical need apparent even to a layperson.  However, the most serious

24  impediment to plaintiff's Eighth Amendment claim is that plaintiff did not have a lower bunk

25  chrono.  Although common sense might suggest that a person with an ankle in a splint might

26  have difficulty climbing into a top bunk, common sense is not the legal standard for an Eighth

16

Amendment violation.  The defendants in this case were not apathetic and unconcerned in their response here.  Instead, plaintiff demonstrated his ability to access the upper bunk on two occasions.  Apparently satisfied that plaintiff could safely access the upper bunk, defendants reassigned plaintiff to the upper bunk where he safely resided for over two weeks.  The court may fault defendants' judgment in assigning plaintiff to a top bunk despite his injured ankle, but it cannot find that defendants' conduct constituted deliberate indifference to a serious medical need in violation of the Eighth Amendment.

The Supreme Court has found that the Eighth Amendment protects prison inmates against future harm.  The Eighth Amendment requires that inmates be provided with basic human needs, one of which is "reasonable safety."  DeShaney v. Winnebago County Dep't of Social Serv., 489 U.S. 189, 200, 109 S.Ct. 998, 1005 (1989).  It is "cruel and unusual punishment to hold convicted criminals in unsafe conditions."  Youngberg v. Romeo, 457 U.S. 307, 315-316, 102 S.Ct. 2452, 2457-2458 (1982).  "[A] remedy for unsafe conditions need not await a tragic event."  Helling v. McKinney, 509 U.S. 25, 33, 113 S.Ct. 2475, 2481 (1993).  Thus, for a claim based on a failure to prevent harm, plaintiff must show that the conditions posed a substantial risk of serious harm.  Farmer v. Brennan, 511 U.S. at 833, 114 S.Ct. at 1977.  Plaintiff must also prove that the prison official whose conduct is alleged to have violated the Eighth Amendment had "a 'sufficiently culpable state of mind,'" id.; Wilson v. Seiter, 501 U.S. 294, 297, 111 S.Ct. 2321, 2323, that is, "that the prison official 'acted or failed to act despite his [actual] knowledge of a substantial risk of serious harm.'"  Farmer, 511 U.S. at 848, 114 S.Ct. at 1984.

This court concludes that whether prison officials were deliberately indifferent to a substantial risk of serious harm, although perhaps a closer question than whether they were deliberately indifferent to plaintiff's serious medical need, must still be answered in the negative. The difference between the claims is whether, in a risk of harm claim, defendants looking ahead have actual knowledge of a substantial risk of harm, requiring them to forestall the risk of harm by some action, as opposed to looking only at the present circumstances to decide if some action

17

1   is required on their part.  In the present case, although common sense again might suggest that an

2   inmate with an injured ankle could eventually reinjure that ankle while attempting to climb into

3   or out of a top bunk, the court cannot conclude on the record before it that there is a genuine

4   issue of material fact that prison officials had actual knowledge of such a risk of harm.  There

5   was no medical restriction putting them on notice that a lower bunk was required to prevent

6   future injury, and the fact that plaintiff did reinjure himself while exiting the top bunk over two

7   weeks later provides only perfect hindsight.  Plaintiff concedes his ankle was feeling better when

8   he was transferred to the upper bunk.  About 25 days had elapsed from the time of plaintiff's

9   original injury (January 23, 2004 to February 18, 2004).  The situation might be different if

10  plaintiff alleged that despite prior injuries while attempting to get out of a top bunk or a specific

11  medical restriction requiring assignment to a lower bunk, he was still assigned to a top bunk, and

12  the unfortunate circumstances leading to an injury were repeated.  However, in the present case,

13  the court concludes as a matter of law that there was no deliberate indifference to a substantial

14  risk of harm in the decision of prison officials to assign plaintiff to a top bunk on January 30,

15  2004.

16          Thus, the court concludes that defendants are entitled to summary judgment on all

17  of the claims arising from plaintiff's assignment to a top bunk on January 30, 2004.  Defendants'

18  summary judgment motion should be granted as to plaintiff's Eighth Amendment claim that

19  defendants failed to protect him from harm.

20                              STATE LAW NEGLIGENCE CLAIM

21          Finally, plaintiff included a state law negligence claim against defendant Amber

22  Johnson.[7]  Plaintiff contends defendant Johnson "exercised negligence to plaintiff's health and

23  safety by failing to protect him from harm by being adequately trained to remain at her assigned

24  

25          [7] In his opposition, plaintiff states that "all of the defendants were negligent in their duty
    to use care."  (Id. at 24.)  However, in plaintiff's first amended complaint, plaintiff alleged a
26  cause of action for negligence as to defendant Johnson only.  (Id. at 15.)

1   duty post," by failing to ensure another officer covered her post in her absence, and by failing to

2   summon immediate medical care for plaintiff.  (FAC at 15.)  In support of his claim, plaintiff

3   provided the Shasta County Main Jail Policy and Procedure Manual.

4          Defendant Johnson provided a declaration in which she states, in pertinent part:

5          As the officer on duty in the Medical Unit, I did not have a "post"
    from which I could not move.  My job duties required that I
6          frequently move to different locations within the Medical Unit and
    the jail.

7
           Part of my job duties included performing a security check of cells
8          on a regular basis.  This was performed every half hour.  On
    February 18, 2004, I conducted a cell check, and observed
9          [plaintiff] at 9:15 p.m.  [Plaintiff] had not sustained the injury at
    that time.

10

11  (Id. at 1.)  Defendant Johnson also provided a copy of the Security Cell Check log for February

12  18, 2004, which she prepared in the course and scope of her employment as one of her regular

13  job duties.  The log reflects that defendant Johnson performed cell checks at 21:15 (9:15 p.m.)

14  and again at 21:30 (9:30 p.m.).  (Id., Ex. A.)

15         The policy and procedure manual provided by plaintiff provides, in pertinent part:

16         Medical:  (General)
      •  There shall be a medical/booking level officer assigned on each shift to the
17         medical/booking level housing portion of the facility (post will be manned 24
    hours a day).  The primary responsibilities include reception of new inmates
18         assigned to the medical/booking level housing areas, the handling and movement
    of inmates within the medical/booking level housing areas and the security of the
19         medical/booking level housing areas.

20  (Pl.'s Ex. N at 2.6.)  The manual then lists specific duties, including, "[m]ake continual cell

21  checks of inmates housed in medical and log same, at least once every hour from 0730 to 1930

22  and twice every hour from 1930 to 0730."  (Id.)  Although the manual states this position is to be

23  "manned" 24 hours a day, the duties recited make clear that the person holding this position is

24  required to move about in order to perform all of the duties.  Plaintiff acknowledged that the

25  officer in charge of the medical unit moves around and goes to different locations within the jail.

26  There is nothing in the manual that required defendant Johnson to ensure another officer "sat at

her post" while defendant Johnson left her station to perform other duties required of the position.  Because defendant Johnson was not required to stay at the medical station for the entire shift, plaintiff's claim that defendant Johnson was negligent for failing to stay at the medical station or for failing to ensure someone covered her station in her absence, must fail.

As noted above, it is undisputed that defendant Johnson was not at her station at the time plaintiff initially fell.  Plaintiff concedes he was unconscious following the fall and has no knowledge of where defendant Johnson was or how long she was gone.  Because defendant Johnson was not at her station and not aware plaintiff had fallen immediately after he fell, the court cannot find defendant Johnson negligent for failing to summon medical care at that time.  Moreover, inmate Scoma has provided a declaration suggesting only eight minutes elapsed from the time plaintiff fell until he was attended to by many officers.  Such a brief delay does not constitute negligence.

Plaintiff has failed to demonstrate that defendant Johnson breached any duty owed to him; thus, defendant Johnson is entitled to judgment on the fifth cause of action for negligence as a matter of law.

IT IS HEREBY ORDERED that:

1.  Defendants' November 2, 2007 request for judicial notice (docket no. 118) is granted;

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Defendants' August 14, 2007 motion for summary judgment (docket no. 98) be granted.

2.  Defendants' August 15, 2007 motion for summary judgment (docket no. 99) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty days after being served with these findings and recommendations, any party may file written

1  objections with the court and serve a copy on all parties.  Such a document should be captioned

2  "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

3  failure to file objections within the specified time may waive the right to appeal the District

4  Court's order.  <u>Martinez v. Ylst</u>, 95 1 F.2d 1153 (9th Cir. 1991).

5  DATED:  February 6, 2008.

6

7                                               UNITED STATES MAGISTRATE JUDGE

8

9  001; brum1797.msj

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26